**In re the MARRIAGE OF Robert S. CHATTEN, Appellee,**

**and**

**Tammy L. Chatten, Appellant.**

**No. 97CA1858.**

Colorado Court of Appeals, Div. I.

Sept. 17, 1998.

Michael C. Morphew, Boulder, for Appellee.

Maxine N. Davenport, Colorado Springs, for Appellant.

Opinion by Judge KAPELKE.

Tammy L. Chatten (mother) appeals from the order modifying the previous decree concerning custody of her daughter. We affirm.

The marriage of mother and Robert S. Chatten (father) was dissolved in Texas in 1994, and mother was granted sole custody of the minor child, then age two. Both parties later moved to Colorado.

In May 1997, father filed a motion to modify custody, asserting that, with mother's consent, the child had been integrated into his family since August 1996. Alternatively, he asserted that the child's environment at the time she was living with mother endangered her physical health and significantly impaired her emotional development.

After a hearing, the trial court determined that the child had been integrated into fa-

ther's family with mother's consent. Based upon its finding that father was better able to provide structure and set boundaries for the child and to encourage the parent-child relationship with mother, the court also determined that it was in the child's best interest that father be granted custody.

Although the court also found there was sufficient evidence to satisfy the criteria required for modification of custody under §14–10–131(2)(c), C.R.S.1998, it concluded that no purpose would be served by making specific findings as to that alternative basis for modification.

## I.

■ Mother first contends that the trial court erred in determining that a sufficient change of circumstances had occurred to support a modification of custody. She urges that she consented only to an increase of father's parenting time and not to the integration of the child into father's home. We disagree.

Section 14–10–131(2), C.R.S.1998, provides that the trial court shall not modify a prior custody decree granting custody to one party unless it finds, based upon facts that have arisen since the prior decree, that a change has occurred in the circumstances of the child or his or her custodian and that the modification is necessary to serve the best interests of the child. In applying these standards, the court must retain the custodian established by the prior decree unless, as applicable here, the "child has been integrated into the family of the petitioner with the consent of the custodian." Section 14–10–131(2)(b), C.R.S.1998.

For purposes of this statute, integration is more than a mere expanded visitation. It includes the performance of normal parental duties, including washing clothes, providing meals, attending to medical needs, assisting with homework, and guiding the children physically, mentally, morally, socially, and emotionally. In addition, the time spent by the child with the proposed custodial parent must be of sufficient duration that the child has become settled into the home of that parent as though it were his or her primary home. *In re Marriage of Pontius*, 761 P.2d 247 (Colo.App.1988).

■ In determining the issue of integration, the trial court should consider the totality of the circumstances, including: the frequency, duration, and quality of the child's contacts with the custodial parent and the proposed custodial parent; the identity of the person making the primary decisions with respect to health care, education, religious training, and the child's general welfare; and the views of the child as to which environment constitutes his or her "home." *In re Marriage of Pontius, supra*.

Section 14–10–131(2)(b) is nearly identical to Uniform Dissolution of Marriage Act §409, 9A *Uniform Laws Annot.* 439 (1998 Master Ed.). The comment to that section states that the rationale for the consent requirement was to avoid non-custodial kidnapping. Thus, the consent requirement has a narrow purpose, and it is error to examine the issue of consent solely in terms of the custodial parent's subjective intentions. *Gibson v. Gibson*, 471 N.W.2d 384 (Minn.App.1991).

■ Instead, the consent requirement is satisfied when the custodian has voluntarily placed the child with the non-custodial parent and willingly permitted the child to become integrated into the new family. *In re Custody of Burnett*, 75 Ill.App.3d 998, 31 Ill.Dec. 142, 394 N.E.2d 58 (1979).

■ Consent of the custodial parent may be implied from a voluntary transfer of custody that results in the child's integration into the family of the non-custodial parent. *In re Marriage of Bolton*, 212 Mont. 212, 690 P.2d 401 (1984). It would be inconsistent with the policies of stability and continuity underlying the modification statute to allow revocation of such consent once the child has become settled into his or her new family with the acquiescence of the custodial parent. *In re Custody of Burnett, supra*.

Here, the trial court found that the parties had agreed in August 1996 that the child would be better off living with father and his current wife, and had further agreed that such living arrangement would continue for at least six months, after which time they would reevaluate the situation.

The court further found that the child had lived in her father's home until Thanksgiving 1996, when mother was going to take the child for a week vacation in Texas. However, mother did not return until December 13, 1996. At that time, the child resumed living with father's family with mother's consent. Finally, the court found that the child had lived continuously with father and his family through the date of the hearing in August 1997, and that the time mother had spent with the child during the first three months of 1997 had been simply in the nature of parenting time.

A review of the entire record shows that the evidence supports the trial court's findings and its conclusion that the child had been integrated into father's family with mother's consent. In addition, the evidence supports the court's determination that modification of custody was in the child's best interests.

## II.

■ Mother also contends that the trial court erred in denying her request for a supplemental custody evaluation. We disagree.

■ Section 14–10–127(1)(a)(I), C.R.S. 1998, provides that the trial court shall appoint another mental health professional to perform a supplemental custody evaluation unless it determines that at least one of five exceptions applies. The trial court must make specific findings to support its denial of any requested evaluation. *In re Marriage of Sepmeier*, 782 P.2d 876 (Colo.App.1989).

Under the exception set forth in § 14–10–127(1)(a)(I)(B), C.R.S.1998, a court shall not order a supplemental evaluation if it determines that: "[a] party objects, and ... the child has a physical or mental condition that would make it harmful for ... the child to participate in the supplemental evaluation...."

In denying mother's request for a supplemental evaluation here, and after hearing the evidence, the court found that a further delay in the resolution of the custody motion would cause emotional stress to the child because it was likely that issues regarding custody

would continue to be raised with her. The court also found that the discussions mother had had with the child as to where she was going to live and attend school had already contributed to the child's anxiety, stress, and resulting stomach aches. Accordingly, the court denied the motion.

Since its determination is supported by the evidence and is based on one of the permitted statutory exceptions, we conclude that the trial court did not abuse its discretion.

## III.

Finally, mother contends that the trial court erred in concluding there was no credible evidence that father had abused the child, mother, or mother's son. Again, we disagree.

In determining the best interests of a child, the trial court must consider whether credible evidence establishes that one of the parties has been a perpetrator of child abuse or neglect, under §18–6–401, C.R.S.1998, or the law of any state, or has been a perpetrator of spouse abuse, as defined in §14–10–124(4), C.R.S.1998. Sections 14–10–124(1.5)(*l*) and 14–10–124(1.5)(m), C.R.S. 1998.

Those sections also provide that if the court makes a finding that one of the parties has been the perpetrator of abuse, then it shall not be in the best interests of the child for the court to award joint custody over the objection of the other party or of the child's guardian ad litem.

Section 18–6–401 states that a person commits child abuse:

if such person causes an injury to a child's life or health, or permits a child to be unreasonably placed in a situation which poses a threat of injury to the child's life or health, or engages in a continued pattern of conduct which results in malnourishment, lack of proper medical care, cruel punishment, mistreatment, or an accumulation of injuries which ultimately results in the death of a child or serious bodily injury to that child.

Section 14–10–124(4) defines "spouse abuse" as "the proven threat of or infliction

of physical pain or injury by a spouse on the other parent."

Here, the trial court found there was insufficient evidence to support a finding that father had abused the child, mother, or mother's son. These findings are supported by the record and reflect a consideration by the court of the allegations of abuse as they related to the issue of the best interests of the child.

The order is affirmed.

METZGER and JONES, JJ., concur.